**No. 24-6413**

# United States Court of Appeals for the Ninth Circuit

LYDIA BULTEMEYER, on behalf of herself and all others similarly situated,

*Plaintiff-Appellee,*

– v. –

CENTURYLINK, INC.,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR PHOENIX, ARIZONA

## FURTHER EXCERPTS OF RECORD

ALBERT E. HARTMANN
MICHAEL O'NEIL
REED SMITH, LLP
10 S. Wacker Drive, 40th Floor
Chicago, Illinois 60606
(312) 207-1000
ahartmann@reedsmith.com
michael.oneil@reedsmith.com

JONATHAN D. HACKER
O'MELVENY & MYERS, LLP
1625 Eye Street, NW
Washington, D.C. 20006
(202) 383-5300
jhacker@omm.com

DANIELLE MORRIS
O'MELVENY & MYERS, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
(949) 823-6900
dmorris@omm.com

*Attorneys for Defendant-Appellant*

CP COUNSEL PRESS (800) 4-APPEAL • (387125)

## TABLE OF CONTENTS


| Docket Entry | Description | Page |
|---|---|---|
| 270 | CenturyLink, Inc.'s Memorandum in Support of its Motion for a New Trial, Filed October 15, 2024 | 3 |
| 220 | Defendant's Trial Brief Regarding Standards for Willful Violations of The Fair Credit Reporting Act, Filed April 9, 2024 | 28 |

Kevin Michael Judiscak
Engelman Berger PC
2800 N Central Ave., Ste. 1200
Phoenix, AZ 85004
T: 602-271-9090
F: 602-222-4999
kmj@eblawyers.com

[Additional Counsel Listed in Signature Block]

*Counsel for CenturyLink, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer, on behalf of herself and all others similarly situated, | Case No. 2:14-cv-02530-SPL |
| Plaintiff, | **CENTURYLINK, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A NEW TRIAL** |
| vs. | |
| CenturyLink, Inc., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

**TABLE OF CONTENTS**


**Page(s)**

I. ARGUMENT ..... 1

A. The Jury Verdict was Against the Clear Weight of the Evidence ..... 1

B. The Multiple, Compounding Errors in the Jury Instructions, and Jury Verdict Form Require A New Trial. ..... 2

1. The Court improperly shifted the burden to CenturyLink to prove it had a permissible purpose to obtain Plaintiff's and the class members' credit reports. ..... 4

2. The jury was not instructed as to who had the burden of proof on whether CenturyLink obtained a credit report on each class member. ..... 5

3. The jury was not instructed that it must find that CenturyLink's statutory violation was willful in order to find for Plaintiff and the Class. ..... 8

4. The Court failed to properly instruct the jury on the standard of willfulness under the FCRA. ..... 8

5. The Court failed to instruct the jury that using credit data to prevent identity theft or to determine whether to charge a deposit is a legitimate business need. ..... 9

6. The Court failed to instruct the jury on the meaning of the statutory term "initiated." ..... 10

7. The Court failed to instruct the jury that consent was not needed for CenturyLink to have a permissible purpose. ..... 10

8. The Court improperly failed to instruct the jury regarding CenturyLink's "reason to believe" defense. ..... 11

9. The Court improperly instructed the jury that their jury service would be completed by 4:30 p.m. on Friday. ..... 12

10. The verdict form improperly barred the jury from reaching different conclusions about the claims of Plaintiff and the class. ..... 13

C. The Individual and Aggregated Statutory and Punitive Damages Awards are Constitutionally Excessive .......... 14

1. The individual and aggregated statutory damages are constitutionally excessive .......... 15

a. Plaintiff's individual award exceeds what is necessary to compensate her for any purported harm .......... 15

b. The statutory damages award, as aggregated, is wholly disproportionated to the alleged violations .......... 16

2. The individual and aggregated punitive damages are constitutionally excessive .......... 17

a. CenturyLink's conduct was not reprehensible .......... 17

b. The ratio of punitive damages to statutory damages awarded by the jury is constitutionally impermissible. .......... 19

c. The punitive damages award, as aggregated among the class, is unconstitutionally impermissible .......... 20

Defendant CenturyLink, Inc., now known as Lumen Technologies ("CenturyLink"), hereby submits the following memorandum in support of its Motion for New Trial.

CenturyLink moves, pursuant to Rule 59(a), for a new trial because (a) the jury verdict was against the clear weight of the evidence; (b) the jury instructions and jury verdict form were erroneous and improperly prejudicial to CenturyLink; and (c) the individual and aggregated awards of statutory and punitive damages are unconstitutionally excessive.

# I. ARGUMENT

## A. The Jury Verdict was Against the Clear Weight of the Evidence.

A new trial is appropriate if "the verdict is against the clear weight of the evidence." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1031 (9th Cir. 2020), *rev'd on other grounds*, *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (same). Here, the jury's verdict is against the clear weight of the evidence for four reasons.

As set forth in CenturyLink's Memorandum in Support of Its Renewed Motion for Judgment as a Matter of Law (Doc. 268): First, the jury verdict in favor of absent class members was against the clear weight of the evidence due to the lack of any evidence that CenturyLink obtained the credits reports of the class. Second, the verdict in favor of Plaintiff and the class was against the clear weight of the evidence because there was no evidence that CenturyLink willfully violated 15 U.S.C. § 1681b(f).

Third, Plaintiff testified why she believed she did not "initiate" an online transaction. (Doc 245, Trial Tr., Day 1 PM, 162:17-25.) However, Plaintiff offered no similar evidence as to what other class members believed. Nor can their subjective intent be presumed. (*See* Doc. 235 at 9-10 (subjective intent of class members relevant to whether they intended to initiate transactions).)

Fourth, as demonstrated by Plaintiff's testimony, she believed that her privacy was invaded and testified that she was "frustrated" when CenturyLink obtained her credit report on the mistaken belief that CenturyLink needed her consent to obtain her credit report. (Doc. 245, Trial Tr., Day 1 PM, at 160:1-9; Pl. Ex. 135.) However, Plaintiff offered no evidence that even a single other class member had the same mistaken belief or viewed CenturyLink obtaining their credit data as invading their privacy or otherwise being improper.

**B. The Multiple, Compounding Errors in the Jury Instructions, and Jury Verdict Form Require A New Trial.**

Because the jury instructions failed to properly instruct on the well-established elements of Plaintiff's FCRA claim and that Plaintiff had the burden to prove those elements, and also failed to instruct on a core defense to that claim previously recognized by this Court, a new trial must be ordered.[1] Erroneous jury instructions, and the failure to give adequate jury instructions, are bases for a new trial. *Murphy v. Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990); *Alozie v. Arizona Board of Regents*, 562 F. Supp. 3d 203, 212 (D. Ariz. 2021) (same). *See also Dang v. Cross*, 422 F.3d 800, 804

[1] The parties' competing jury instructions are at Doc. 201. The instructions ultimately given to the jury by the Court are at Doc. 252.

(9th Cir. 2005) (cleaned up) ("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered.") (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001)). "A district court's failure to inform the jury of all the elements essential to a plaintiff's claim necessarily misleads the jury." *Wankier v. Crown Equip. Corp*., 353 F.3d 862, 868 (10th Cir. 2003). Here, the jury verdict cannot be sustained because the jury's verdict "may have resulted from a misapprehension of law rather than from factual determinations in favor of the prevailing party." *Clem v. Lomeli*, 566 F.3d 1177, 1179 (9th Cir. 2009) (citations omitted). Moreover, a district court commits error when it rejects proposed jury instructions that are properly supported by the law and the evidence. *Id.* at 1182. Relevant here, several jury instructions improperly assigned the burden of proof to CenturyLink, rather than the Plaintiff asserting the claims, which is presumptively harmful. *Clem*, 566 F.3d at 1182-83. Moreover, the number and overlap of errors in the jury instructions compound the prejudice, and taken as a whole, mandate a new trial. *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 U.S. Dist. LEXIS 134029, at *13 (N.D. Cal. Jan. 27, 2009) (explain that in evaluating whether new trial is justified based on erroneous jury instructions and other errors, the court is to examine "the cumulative weight of any errors").

1. The Court improperly shifted the burden to CenturyLink to prove it had a permissible purpose to obtain Plaintiff's and the class members' credit reports.

By its trial brief, CenturyLink, relying on *Jabbari v. Farmer*, 965 F.3d 1001, 1008 (9th Cir. 2020), proposed that "the Court should instruct the jury that it is Plaintiff's burden to prove that CenturyLink did not have a permissible purpose to obtain her or the class members' consumer credit reports." (Doc. 219 at 5; Doc. 235 at 19.) Nevertheless, the Court adopted Plaintiff's proposed Jury Instruction 1.5 - Claims and Defenses as a preliminary and final jury instruction, which improperly shifted the burden of proof on a core element of Plaintiff's claim to CenturyLink. (Doc. 235, at 19-20; Doc. 249, Trial Tr., Day 3 PM, at 599:7-12.) The Court interpreted *Nayab v. Capital One Bank USA*, 942 F.3d 480, 493 (9th Cir. 2019), which predates *Jabbari*, as placing on a defendant the burden of proving at trial that it did not obtain a consumer report without a permissible purpose. But *Nayab*'s holding is not nearly so broad. Indeed, if it were, it would turn on its head the foundational principle that proving all elements of her claim is a plaintiff's burden. *Nayab*, 942 F.3d at 494. *Nayab* was an appeal from an order dismissing plaintiff's FCRA claim for failure to sufficiently plead the lack of a permissible purpose under 15 U.S.C. § 1681b(f). (Doc. 19 at 3.) The Court found only that plaintiff's allegations were sufficient to raise an inference that defendant had violated the statute, which was sufficient to survive the pleadings stage in light of the informational asymmetry between plaintiffs and defendants at the outset of a case. Indeed, the Ninth Circuit expressly stated: "it is important to note that the burden of pleading (i.e., who bears the burden of pleading a fact)—not the ultimate burden of

proof or persuasion—is at issue." *Nayab*, 942 F.3d at 493. Notably, the *Nayab* court did not examine or cite any decision interpreting the FCRA. (Doc. 219 at 3.)

The Court's rejection of CenturyLink's proposed instruction (Doc. 201 at 6-7), properly supported by Ninth Circuit law, was in error.

2. The jury was not instructed as to who had the burden of proof on whether CenturyLink obtained a credit report on each class member.

At the final jury conference, CenturyLink renewed its objection that Plaintiff's proposed final Jury Instruction 1.5-Claims and Defenses (like the preliminary instruction) failed to instruct the jury that the burden of proof is on Plaintiff as to the other elements of her claim, for example, whether or not a credit report was obtained on each class member. (Doc. 249, Trial Tr., Day 3 PM, at 599:16-23, 602:11-16.) Over CenturyLink's objection, the Court adopted Plaintiff's version of Jury Instruction 1.5 – Claims and Defenses, which instructed that Plaintiff must prove that CenturyLink obtained only *her* credit report, and not also the credit reports of *each* of the class members. As such, the jury was never instructed on who bears the burden of proof on a core element of her class claim.[2] *See also Wankier*, 353 F.3d at 868 (finding there was "no doubt that the erroneous instruction regarding Plaintiff's burden to show a safer alternative design may have misled the jury.").

---

[2] The prejudice of the instruction is compounded by Plaintiff's utter failure to prove that CenturyLink obtained the credit reports on any class members (*see* Docs. 259, 260, and 265) and the jury verdict form, which conflated the separate questions as to Plaintiff and the class. (*See supra*. at 13-14.)

Compounding this error was the Court's *in limine* ruling that, because the class was defined as consumers whose credit reports were obtained by CenturyLink, Plaintiff was not required to prove at trial that CenturyLink obtained every class member's credit report. (Doc. 233 at 3 (denying CenturyLink's motion *in limine* that Plaintiff could not rely on the class definition (Doc. 218) and ruling "**THE COURT THEREFORE FINDS** that Defendant has obtained credit report data on the class members because the class definition does not include consumers who did not have their credit report pulled.").)

That class-certification decision is not evidence that could be used to prove Plaintiff's class claims at trial. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 602 (9th Cir. 2010) (explaining the court's job at the Rule 23 stage is to make "factual determinations regarding evidence as it relates to common questions of fact or law but not to decide which parties' evidence is ultimately more persuasive as to liability"), *rev'd on other grounds*, 564 U.S. 338 (2011); *see also Lytle v. Nutramax Labs., Inc.*, No. 22-55744, 2024 U.S. App. LEXIS 21431, at *26-27 (9th Cir. Aug. 23, 2024) (at class certification "a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial").

Nor do a court's Rule 23 decisions bind the jury at trial. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 318 & n.19 (3d Cir. 2008) ("Although the district court's findings for the purpose of class certification are conclusive on that topic, they do not bind the factfinder on the merits.") (citing *In re Initial Pub. Offerings*

*Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)); *see also, e.g.*, *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) (court's factual findings at the class certification stage are not binding on the jury). Thus, at trial only the jury can make the necessary factual finding as to CenturyLink's potential liability to the class.

Moreover, the Seventh Amendment of the U.S. Constitution establishes the right to have "juriable issues" determined by a jury, and not the court. Likewise, rights established by the Due Process Clause of the Fourteenth Amendment provide an additional important protection to defendants, which cannot be abridged in class actions under the Rules Enabling Act. *Dukes*, 564 U.S. at 367 (explaining the "Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right[.]'") (quoting 28 U.S. C. § 2072(b)); *see also Wit v. United Behavioral Health*, 79 F.4th 1068, 1084 (9th Cir. 2023) (same, quoting *Dukes*). Accordingly, "a class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims." *Dukes*, 564 U.S. at 367. Likewise, a defendant cannot be prevented from arguing to the jury that a plaintiff failed to meet her burden of proving the elements of her claim with respect to all absent class members.

This Court did exactly that by allowing Plaintiff to use the class definition as trial evidence of a threshold element of the class claim. The prejudice from this ruling further justifies a new trial. *See, e.g.*, *Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir. 2008) (explaining prejudice warrants new trial when district court's error tainted the verdict); *Geurin v. Winston Indus.*, 316 F.3d 879, 884-85 (9th Cir. 2002) (new trial

warranted when court's rulings not only impacted a party's ability to defend against the claims, but also essentially "preordained" the jury's verdict).

3. The jury was not instructed that it must find that CenturyLink's statutory violation was willful in order to find for Plaintiff and the Class.

Equally flawed is the second part of Jury Instruction 1.5 - Claims and Defenses. Specifically, the jury was instructed that "Ms. Bultemeyer must show by a preponderance of the evidence that CenturyLink willfully obtained her consumer credit report." (Doc. 201 at 5) (emphasis added). But that instruction is a clear misstatement of law. The FCRA does not require that Plaintiff prove CenturyLink "willfully obtained" credit reports, in order to recover statutory and punitive damages, but rather that CenturyLink "willfully fail[ed] to comply" with the FCRA when it obtained such credit reports. 15 U.S.C. § 1681n(a). Based on this flawed instruction, the jury relied on evidence that CenturyLink purposefully built an online ordering process to (potentially) seek credit reports for certain online transactions. (Doc. 247, Trial Tr., Day 2 PM, 358:25-359:23), instead of the lack of evidence that any statutory violation was committed willfully by CenturyLink.

4. The Court failed to properly instruct the jury on the standard of willfulness under the FCRA.

At trial, the Court rejected CenturyLink's proposed instruction, consistent with the FCRA's remedial scheme, 15 U.S.C §§ 1681n, 1681o, that distinguished between a merely negligent violation and a willful violation. (*See* Doc. 201 at 62.) That distinction is significant here, where Plaintiff did not seek actual damages. Instead, she sought

statutory and punitive damages, which require a showing that the defendant not only violated the statute but did so willfully. Compounding that error, the Court also declined to instruct the jury on the standard the jury was required to apply when assessing willfulness as established by the U.S. Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-71. (Doc. 201 at 62-63.) Instead, the Court adopted Plaintiff's instruction. (Doc. 249, Day 3 PM, at 613:13-20, 615-9-22.) The *Safeco* test considers whether a defendant's interpretation that its conduct complied with the FCRA was objectively unreasonable in light of the statutory text, and appellate court decisions and "authoritative guidance" from regulators interpreting same. (*See* Doc. 268 at 10-17.) Absent such a finding, there can be no finding of willfulness. And since the jury was not provided with this standard, it could not have properly determined whether CenturyLink's conduct willfully violated the FCRA.

5. The Court failed to instruct the jury that using credit data to prevent identity theft or to determine whether to charge a deposit is a legitimate business need.

The uncontroverted trial evidence was that CenturyLink used the credit reports at issue to authenticate Plaintiff's identity and determine whether to charge a deposit. However, Special Jury Instruction No. 4 – Permissible Purpose omitted CenturyLink's proposed instruction that using credit reports for these purposes was a legitimate business need, i.e., the second element of the permissible purpose claim. (Doc. 249, Trial Tr., Day 3 PM, at 609-6-13; Doc. 201 at 27-28.) The failure to do so was erroneous, particularly because the jury was asked to determine if CenturyLink had a permissible purpose, but without a corresponding instruction. (*See* Doc. 257 at ¶ 2.)

6. The Court failed to instruct the jury on the meaning of the statutory term "initiated."

A core issue at trial was whether Plaintiff (and each class member) had "initiated" the order of CenturyLink services by completing four steps of the five-step online ordering process and proceeding into the final step. That question is central to whether CenturyLink had a permissible purpose under 15 U.S.C. § 1681b(a)(3)(F)(i). However, the statute does not define "initiated."

The Court erred when it failed to include CenturyLink's proposed language regarding how the jury could interpret the statutory term "initiate" in Special Jury Instruction No. 4 – Permissible Purpose. (Doc. 249, Trial Tr., Day 3 PM, at 612:2-23). Specifically, CenturyLink sought to instruct the jury that, because the FCRA does not define the term "initiated," the jury could give that term its ordinary meaning which, according to dictionaries, means to begin, commence, enter upon, to introduce, get going, start. Indeed, this Court's ruling on the parties' Rule 56 motions acknowledged these definitions. (Doc. 116 at 5.)

7. The Court failed to instruct the jury that consent was not needed for CenturyLink to have a permissible purpose.

The Court also rejected CenturyLink's proposed jury instruction that the FCRA does not require it to obtain a consumer's consent to obtain her credit report. (*See* Doc. 201 at 27.) It is undeniable that statement is an accurate statement of the law, as consent is only one of more than a dozen permissible purposes under the statute, and the permissible purpose at issue here does not require obtaining consent. *See* 15 U.S.C. § 1681b(a). The instruction was particularly necessary, given Plaintiff's counsel's

irrelevant questioning of CenturyLink witnesses as to whether such consent was obtained from Plaintiff and whether CenturyLink had a policy of requiring consent before obtaining a credit report.

8. The Court improperly failed to instruct the jury regarding CenturyLink's "reason to believe" defense.

The Court improperly withdrew from the jury's consideration CenturyLink's "reason to believe" defense when it omitted the corresponding portion of CenturyLink's proposed Special Jury Instruction No. 4. Notably, CenturyLink presented uncontroverted evidence directly related to defense. Its e-commerce witness expressly testified that it is CenturyLink's belief that once the consumer submits her information, selects and customizes her order, accepts the terms and conditions, and advances to Step 5 of the online order process, she has initiated the transactions. (Doc. 246 at 274:6-275:12.)

The Court's effective denial of that defense was inconsistent with the Court's earlier rulings acknowledging the defense. For example, the Court noted in its summary judgment ruling that whether CenturyLink had reason to believe it had a permissible purpose was relevant to its liability. (Doc. 116 at 5-6 (citing *Rand v. Citibank, N.A.*, No. 14-CV-04772 NC, 2015 WL 510967, at * 3 (N.D. Cal. Feb. 6, 2015).) Additionally, in certifying the class, the Court ruled that CenturyLink's knowledge, or "reason to believe," that class members had initiated business transactions using the online order process was a common issue that predominated over individualized issues, including whether CenturyLink obtained credit report data about each class member. (Doc. 178 at

6-7.) However, in later rulings on the parties' proposed jury instructions, this Court refused CenturyLink's request to incorporate this purportedly common, predominating issue which justified class-certification into the jury instructions. (Doc. 235 at 21-22; Doc. 249, Trial Tr., Day 3 PM, at 610:20-611:16, 612:20-25, 613:1-16.) Thus, the jury did not—and was never even asked to—consider and decide CenturyLink's defense that purportedly predominated over the individualized issues. (*See* Docs. 259, 260, and 265.)

Aside from being a defense to a negligent violation of the statute, CenturyLink's reason to believe Plaintiff and the class initiated a transaction is clearly a defense to the claim that CenturyLink's purported statutory violation was willful. If CenturyLink had a reason to believe the consumer had initiated a transaction, it undercuts any finding that it willfully violated the FCRA when it obtained the credit report as a result. (*See Spokeo*, 578 U.S. 330.)

Because a party is entitled to "an instruction about his or her theory if it is supported by law and has foundation in the evidence", (*Clem*, 566 F.3d at 1181), a new trial must be ordered.

9. The Court improperly instructed the jury that their jury service would be completed by 4:30 p.m. on Friday.

In connection with voir dire of the 31 potential jurors, the Court assured the prospective jurors that the trial would be finished "no later than 4:30 on Friday, this coming Friday. So, it's a four-day case." (Doc. 244 at 16 (and asking potential jurors if they have a "conflict that would cause them to not be available during the course of the trial").) But the Court's promise to the jurors gave them the false impression that they

must reach a verdict by 4:30 p.m. that afternoon. Given that the jury began deliberations shortly after 1 pm on Friday afternoon and reached a verdict less than an hour later (Doc. 250), this misleading statement inappropriately suggested a time limit on the jury's deliberations and therefore was prejudicial to CenturyLink.

10. The verdict form improperly barred the jury from reaching different conclusions about the claims of Plaintiff and the class.

Separately, the Court's rejection of the verdict form proposed by CenturyLink and instead using Plaintiff's form only compounded the problems with the Court's rulings and instructions to the jury (Doc. 258 at 650-654; Doc. 257.) Most notably, the verdict form barred the jurors from reaching different conclusions about the differing facts and claims of Plaintiff and the absent class members, e.g., whether CenturyLink obtained the credit reports of Plaintiff "and" the class. Over CenturyLink's objections, the verdict form only asked the jury to answer compound questions about the entire class, without drawing any distinction between Plaintiff and among the absent class members. (Doc. 257.)

Given the significant differences in the evidence relating to Plaintiff and absent class members, this inappropriate melding of questions (and, therefore, answers) relating to those separate sets of evidence was particularly prejudicial to CenturyLink. As noted in the pending Motion to Decertify the Class (Docs. 260 and 265), although Plaintiff provided evidence that CenturyLink obtained her credit report, she provided no evidence CenturyLink obtained the credit reports of absent class members. Consequently, the jury was denied the opportunity to arrive at separate answers to the

question, based on the differing evidence presented at trial. The U.S. Supreme Court in *Trans Union LLC v. Ramirez* emphasized the importance of separately examining the claims of the class representative and absent class members, particularly where the evidence differs between representative and class members. 594 U.S. at 437-39.

As a result, the verdict form provided to the jury was confusing to the jury, which wrongly suggested that evidence relevant to Plaintiff was the same as for the class and unfairly allowed absent class members to recover sizable statutory and punitive damages based merely on the evidence relating to Plaintiff.

### C. The Individual and Aggregated Statutory and Punitive Damages Awards are Constitutionally Excessive

Under Rule 59(a), a trial court can grant a motion for a new trial when "the damages are excessive[.]" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations and citation omitted); *see also Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983) (court "erred in entering a judgment for the full amount of the jury's verdict after it concluded that the damages were excessive"); *accord Johnathon Cross v. Candlewic*, No. CV-20-00423-TUC-RM, 2024 U.S. Dist. LEXIS 169972, *5 (D. Ariz. Sep. 19, 2024). A court should "uphold the jury's finding unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). However, where "a damages award exceeds its reasonable bounds," and "is grossly excessive and unsupported by the evidence," a new trial is warranted. *Bell v. Williams*, 108 F.4th 809, 831 (9th Cir. 2024).

1. The individual and aggregated statutory damages are constitutionally excessive.

At trial, the jury awarded Plaintiff and each class member $500 in statutory damages. However, the individual awards "exceeded what was necessary" to compensate Plaintiff or the class members and, in the aggregate, are wholly disproportionate and therefore constitutionally excessive.

a. Plaintiff's individual award exceeds what is necessary to compensate her for any purported harm.

Statutory damages are available under the FCRA only for "willful" violations of the statute (not just willful conduct that is later found to have violated the statute). And even then, the statute provides a range of available damages of $100 - $1,000 per violation to account for the egregiousness of the violation. *See* 15 U.S.C. 1681n(a)(1)(A)(2). There was no evidence presented at trial to support an award exceeding the bare-minimum statutory damages here. Plaintiff testified that she believed her privacy was invaded because she (wrongly) believed that CenturyLink needed her consent (Doc. 245, Trial Tr., Day 1 PM, at 160:1-9.) There was no evidence that CenturyLink used her credit report for any purpose other than to underwrite her abandoned order. There was no evidence of any physical harm, financial harm, or defamatory harm and there was no public disclosure of Plaintiff's information. For this theoretical invasion-of-privacy harm, the award exceeds what is necessary to compensate Plaintiff for any purported injury. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990) (finding "individual awards [to class members] exceeded what was necessary.") As explained above, there was no basis

for statutory damages whatsoever because there was no basis for the jury's finding of willfulness. But there was certainly no basis for such a high statutory damages award.

b. The statutory damages award, as aggregated, is wholly disproportionated to the alleged violations.

Further, the jury's award of $500 in statutory damages, once aggregated for the class (which, according to Plaintiff) totals 56,075 members, amounting to a total award of $28,037,500, is constitutionally excessive and disproportional to the alleged violations. Although juries have discretion in awarding damages, the due process clause of the Constitution sets outer limits on the magnitude of damages awards. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022). In particular, "[w]here a statute's compensation and deterrence goals are so greatly overshadowed by punitive elements [and untethered to the statute's purpose], constitutional due process limitations are more likely to apply." *Id.* at 1122.

This constitutional concern particularly arises with the aggregation of statutory damages which "are subject to constitutional limitation . . . when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits." *Id.* at 1123 (quoting *St. Louis, I. M. & S. R. Co. v. Williams*, 251 U.S. 63, 67 (1919)). As the Ninth Circuit noted, "[a]s with punitive damages awarded by juries and per-violation statutory damages awards, a district court must consider the magnitude of the aggregated award in relation to the statute's goals of compensation, deterrence, and punishment and to the proscribed conduct." *Id. See also Six (6) Mexican Workers*, 904 F.2d at 1309 ("[d]espite the aggravating nature of the

defendant's violations" the award, in the aggregate, exceeded "that necessary to enforce the Act or deter future violations")

Here, a $28,037,500 award in statutory damages is wholly disproportionated to the purported FCRA violations.

2. The individual and aggregated punitive damages are constitutionally excessive.

The United States Supreme Court has instructed "courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). In the context of statutory and punitive damages awards under the FCRA, courts focus on the first two factors. *Ramirez*, 951 F.3d at 1037.

a. CenturyLink's conduct was not reprehensible.

The "most important guidepost" is reprehensibility. *Ramirez*, 951 F.3d at 1036 (citing *State Farm*, 538 U.S. at 419). Reprehensibility involves "considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an

isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.

Here, none of the factors weigh in favor of imposing punitive damages, much less the excessive amount awarded by the jury. Plaintiff offered no allegations or evidence of physical harm or an indifference to the health and safety of consumers. The only harm alleged by Plaintiff was an invasion of privacy premised on her mistaken view that her consent was necessary. Nor did Plaintiff present any evidence of physical or economic harm, or even financial vulnerability, i.e., an impact on class member's ability to obtain credit. *Ramirez*, 951 F.3d at 1037. To the contrary, the uncontroverted evidence was that the presence of a CenturyLink inquiry on a credit report had no impact on a consumer's credit score. (Doc. 248, Trial Tr., Day 3 AM, 482:4-16; 483:15-17; 488:16-18.)

Nor was CenturyLink's conduct "repeated and willful." *Ramirez*, 951 F.3d at 1037 (finding factor satisfied when defendant had been sued multiple times and appellate court had previously found same conduct willfully violated FCRA); *see also Smith v. LexisNexis Screening Solutions, Inc.*, 837 F.3d 604, 612 (6th Cir. 2016) (reversing district court's judgment awarding punitive damages because there was no evidence of willful FCRA violation). In fact, Plaintiff offered no evidence that CenturyLink's alleged FCRA violation was willful, i.e., no intent to violate the FCRA, no misuse or sale of the credit data. CenturyLink used credit data to set deposits to avoid a "bait and switch" by increasing prices after consumes submitted orders. Moreover, CenturyLink presented uncontradicted evidence that it had reason to believe

consumers had initiated transactions. (*See* Doc. 268 at 12-14.) Accordingly, none of the *State Farm* factors support a finding of reprehensible conduct that would justify the punitive damages here. *State Farm*, 538 U.S. at 419 ("absence of all of [the factors] renders any award suspect"). Finally, there was no suggestion of "intentional malice, trickery, or deceit." *State Farm*, 538 U.S. at 419.

b. The ratio of punitive damages to statutory damages awarded by the jury is constitutionally impermissible.

Due process imposes "concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm*, 538 U.S. at 425. Here, the jury awarded a 4:1 ratio of punitive ($2,000) to statutory ($500) damages. (Doc. 257 at 1-2.) However, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425. Here, any award of statutory damages would be more than "substantial" given the lack of evidence of harm. Accordingly, a ratio of punitive to statutory of 1:1 (or less) would "reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425; *see also Bach v. First Union Nat'l Bank*, 486 F.3d 150, 156 (6th Cir. 2007) (reducing FCRA punitive damages award to equal compensatory award following "general principle that a plaintiff who receives a considerable compensatory damages award ought not also receive a sizeable punitive damages award absent special circumstances"). Therefore, the 4:1 ratio of punitive to statutory damages awarded here is constitutionally excessive. *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 U.S. Dist.

LEXIS 134029, at *13 (N.D. Cal. Jan. 27, 2009) (explaining that in evaluating whether new trial is justified based on erroneous jury instructions and other errors, the court is to examine "the cumulative weight of any errors")

c. The punitive damages award, as aggregated among the class, is unconstitutionally impermissible.

Further, the jury's award of punitive damages suffers from the same aggregation problem as the award of statutory damages. (*See supra* at 16-17.) Because the parties did not know how many people are in the class, (*see* Doc. 266 at 8), the jury was not told how large the class was or, correspondingly, the total punitive damages awarded. In fact, downplaying the magnitude of the requested punitive damage award, Plaintiff's counsel specifically told the jury that "we are not asking for a million dollars." (Doc. 258, Trial Tr., Day 4 AM, 682:16.) However, if the class consists of 56,075 people—as Plaintiff incorrectly contends (Doc. 263 at 2)—then the total award of punitive damages here would be **more than $112 million**. Thus, the jury's award of punitive damages is not only impermissible, it was not fully informed; it was premised on Plaintiff's counsel's misleading understatement as to the enormity of the possible punitive damages. *See Wakefield*, 51 F.4th at 1123 (court must consider "magnitude of the aggregated award" of punitive damages). (*See also supra* at 16-17.)

Therefore, the jury's award of punitive damages cannot stand, and CenturyLink is entitled to a new trial.

Respectfully submitted on October 15, 2024.

*s/ Michael O'Neil*

Robert A. Roth *(pro hac vice)*
Michael O'Neil *(pro hac vice)*
Albert E Hartmann *(pro hac vice)*
Reed Smith LLP
10 S Wacker Dr., 40th Floor
Chicago, IL 60606-7507
T: 312-207-2879
F: 312-207-6400
rroth@reedsmith.com
michael.oneil@reedsmith.com
ahartmann@reedsmith.com

Kevin Michael Judiscak
Engelman Berger PC
2800 N Central Ave., Ste. 1200
Phoenix, AZ 85004
T: 602-271-9090
F: 602-222-4999
kmj@eblawyers.com

*Counsel for CenturyLink, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on October 15, 2024, a correct and accurate copy of the foregoing document was filed with the Clerk for the U.S. District Court of Arizona using the CM/ECF system which sent notification of the same to CenturyLink through counsel of record below as follows:

Russell S. Thompson, IV
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
rthompson@ThompsonConsumerLaw.com

Andrew Joseph Brown
Law Offices of Andrew J Brown
501 W Broadway, Ste. 1490
San Diego, CA 92101
andrewb@thebrownlawfirm.com

*s/ Michael O'Neil*
Michael O'Neil

Kevin Michael Judiscak
Engelman Berger PC
2800 N Central Ave., Ste. 1200
Phoenix, AZ 85004
T: 602-271-9090
F: 602-222-4999
kmj@eblawyers.com

[Additional Counsel Listed in Signature Block]

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CenturyLink, Inc.,<br><br>Defendant. | Case No. 2:14-cv-02530-SPL<br><br>**DEFENDANT'S TRIAL BRIEF REGARDING STANDARDS FOR WILLFUL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT** |

Defendant CenturyLink, Inc., now known as Lumen Technologies ("CenturyLink"), by and through its undersigned counsel, hereby submits its trial brief regarding the standards for willful violations of the Fair Credit Reporting Act.

Plaintiff alleges that CenturyLink violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. (the "FCRA"). To prevail on her class claims and recover statutory damages for herself and members of the certified class, Plaintiff must prove that CenturyLink's alleged FCRA violation was "willful" under 15 U.S.C. § 1681n(a). Under the U.S. Supreme Court's decision in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), CenturyLink cannot be found to have willfully violated the FCRA unless its interpretation of the FCRA's relevant permissible purpose provision was "objectively unreasonable" in light of the statutory text, appellate court decisions, and any "authoritative" regulatory guidance that existed at the time of CenturyLink's conduct. This is true even if the jury might ultimately determine that CenturyLink violated the FCRA.

Relevant here, the FCRA provides a "permissible purpose" for a user (like CenturyLink) to obtain a credit report where the user has "a legitimate business need" for the individual's information "in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i). While Plaintiff readily admitted that she had initiated—or, in this Court's words, "began" (Doc. 159 at 1)—a transaction with CenturyLink, Plaintiff argues that she did not "initiate" a transaction under the FCRA because she did not complete her "purchase" or "actually place[]" an order with CenturyLink. (*See* Doc. 113, Pl.'s Reply to Def's Resp. to Pl.'s Partial Mot.

for Summ. Judg. And Resp. to Cross-Mot. for Summ. Judg., at 2, 5; Doc. 1, Class Action Complaint, at ¶ 25 ("As Plaintiff never ordered services from [CenturyLink], Plaintiff did not initiate a business transaction with [CenturyLink].").)

In *Safeco*, the United States Supreme Court created a three-part "objective reasonableness" test which established a safe harbor from liability for alleged willful FCRA violations where "the company acted on a reasonable interpretation of FCRA's coverage." *Safeco*, 551 U.S. at 70. Under that test, a company like CenturyLink does not willfully violate the FCRA unless its interpretation of the FCRA is "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." *Safeco*, 551 U.S. at 69-70. In evaluating the reasonableness of a defendant's interpretation of the FCRA, courts must consider whether the interpretation (1) "has a foundation in the statutory text," (2) whether any courts of appeals decisions or (3) "authoritative guidance" from the applicable regulatory agency, e.g., the FTC, "warned [the defendant] away from the view it took." *Safeco*, 551 U.S. at 69-70; *see also Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 76061 (9th Cir. 2018) ("there was no statute, CFPB guidance, or case law that 'might have warned [Experian] away from the view it took' or informed Experian that its approach to reporting short sales was objectively unreasonable") (citing *Safeco*, 551 U.S. at 70) (alterations in *Shaw*).

Moreover, even though the Supreme Court disagreed with a defendant's interpretation of the FCRA, it nevertheless held the violation was not willful because that interpretation was not "objectively unreasonable." *Safeco*, 551 U.S. at 69-70. "Where, as here, the statutory text and relevant court and agency guidance allow for

more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violation." *Safeco*, 551 U.S. at 70 n.20.

The express language of Section 1681b(a)(3)(F)(i) permits CenturyLink to obtain FCRA data in connection with a transaction "initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i). Plaintiff's claim that CenturyLink violated the FCRA when it obtained credit data is premised on the fact that, although she admittedly started an order, she did not "complete" that order because she ultimately decided to not place the order for CenturyLink internet services. However, Section 1681b(a)(3)(F)(i) only requires that Plaintiff "initiate" her order, it does not require that she complete the order. Thus, CenturyLink's interpretation of the relevant FCRA permissible purpose provision "has a foundation in the statutory text," meaning that any alleged FCRA violation cannot be found to be willful. *Safeco*, 551 U.S. at 69-70.

With respect to the second part of the *Safeco* test, there are no federal appellate court decisions which suggest that a company, like CenturyLink, must wait for a consumer to <u>complete</u> an order they have <u>initiated</u> to have an FCRA permissible purpose to request their credit data. Under *Safeco*, where no court of appeals has issued a decision interpretating the FCRA provision at issue in a way "that might have warned [defendant] away from the view it took," it cannot be said that the interpretation of the FCRA is "objectively unreasonable." 551 U.S. at 70; *see also Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673-74 (9th Cir. 2020) ("when the applicable language of the FCRA is 'less than pellucid,' [*Safeco*, 551 U.S.] at 70, a defendant will nearly

always avoid liability so long as an appellate court has not already interpreted that language").) Here, as demonstrated by the parties' Joint Jury Instructions, neither Plaintiff nor CenturyLink has identified a single federal appellate court decision that supports Plaintiff's view that to "initiate" a transaction means to "complete" a transaction.[1] Thus, CenturyLink's alleged FCRA violation cannot be willful because there are no appellate court decisions "that might have warned [CenturyLink] away from the view it took." *Safeco*, 551 U.S. at 70.

The objective reasonableness of CenturyLink's interpretation is further demonstrated by the absence of any authoritative regulatory guidance suggesting that CenturyLink's interpretation is wrong. *See Safeco*, 551 U.S. at 70 (holding that a lack of "authoritative guidance" from the regulators suggesting that a defendant's FCRA interpretation is wrong compels finding of no willfulness). To support her arguments as to the meaning of Section 1681b(a)(3)(F)(i), Plaintiff relies on an advisory, non-binding letter authored by staff of the Federal Trade Commission ("FTC") outlining views about when a hypothetical in-person car buyer "initiates" a transaction. (Doc. 109, Pl's Partial Mot. for Summ. Judg., at 12 (*quoting* Doc. 67-13 (Advisory Opinion to Coffey (02-11-98) (the "Coffey Letter")).) However, even if the Coffey Letter supported Plaintiff's view—it does not—that letter is not relevant to the willfulness analysis in *Safeco*.

---

[1] Notably, available appellate court decisions support CenturyLink's view that "initiate" does not mean "complete." See *Bickley v. Dish Network, LLC*, 751 F.3d 724, 732-33 (6th Cir. 2014) (finding an FCRA permissible purpose under Section 1681b(a)(3)(F)(i) when an identity thief had initiated a transaction, but could not complete the transaction because the user detected the fraud).

According to the Supreme Court such informal FTC staff opinion letters do not constitute authoritative guidance that can support a finding of willfulness. *See Safeco*, 551 U.S. at 70 n.19 ("the letter did not canvass the issue, and it explicitly indicated that it was merely 'an informal staff opinion …. not binding on the Commission.'") (citation omitted). Accordingly, the absence of authoritative regulatory guidance indicating that CenturyLink must wait until a consumer completed an order they had initiated further reinforces that Plaintiff has no viable claim for willfulness.

Respectfully submitted on April 9, 2024.

*s/ Michael O'Neil*

Robert A. Roth *(pro hac vice)*
Michael O'Neil *(pro hac vice)*
Albert E Hartmann *(pro hac vice)*
Reed Smith LLP
10 S Wacker Dr., 40th Floor
Chicago, IL 60606-7507
T: 312-207-2879
F: 312-207-6400
rroth@reedsmith.com
michael.oneil@reedsmith.com
ahartmann@reedsmith.com

Kevin Michael Judiscak
Engelman Berger PC
2800 N Central Ave., Ste. 1200
Phoenix, AZ 85004
T: 602-271-9090
F: 602-222-4999
kmj@eblawyers.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on April 9, 2024, a correct and accurate copy of the foregoing document was filed with the Clerk for the U.S. District Court of Arizona using the CM/ECF system which sent notification of the same to Defendant through counsel of record below as follows:

Russell S. Thompson, IV
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
rthompson@ThompsonConsumerLaw.com

Andrew Joseph Brown
Law Offices of Andrew J Brown
501 W Broadway, Ste. 1490
San Diego, CA 92101
andrewb@thebrownlawfirm.com

*s/ Michael O'Neil*
Michael O'Neil